May it please the Court. My name is Kel Damsgaard, and I represent the appellant, Lester Building Systems, in this case. I'd like to reserve three minutes of my time, if I could, for rebuttal. I'd like to start by reporting that last Friday we received an order from the Minnesota Supreme Court denying the petition for review of Louisiana-Pacific. So what that means is that all matters that are part of the jury verdict in Minnesota have been resolved except that portion, which is the subject of the injunction in this case. Now, as to that injunction, I'll first reiterate certain key facts. First, Lester. Does that mean the trial court still hasn't ruled on the question of the motion for a new trial? No, the trial judge ruled on the post-trial motions and denied them. Oh, he did deny them? Yes. Then it was appealed to the Court of Appeals. The Court of Appeals affirmed the judgment below, but it excerpted out that portion of the verdict, the $11.2 million for the cost of repair damage, and said that Louisiana-Pacific may appeal again to the Court of Appeals in the event the injunction is lifted. So the trial court ruled that the $11.2 stands? Yes. The rejection of the new trial motion as to that $11.2? Yes. And that was after the injunction? Pardon me? After the injunction? Yes. However, he complied with the injunction, which just limited his ability to order entry of that judgment. It did not in any way prohibit him from deciding the issues of the case. Now, the Minnesota Court of Appeals appeared to cut out the injunction-related issues in its disposition, and seemed pretty explicit in saying if these issues become alive again in Minnesota, they need to be – they are properly the subject of a revisitation, a new appeal. But my sense is that the trial court, in effect, disposed of those issues by entering a contingent or announcing a contingent judgment. And so if I understand correctly, the posture is if there's another issue to return to Minnesota after the Oregon case is resolved, it winds up returning in the form of a new appeal to the Minnesota Court of Appeals. Is that correct? Exactly. What would happen is in the event the injunction were vacated, then the judgment in the trial court would become automatic because it was not pro-tunc by the trial judge. Louisiana Pacific would file a notice of appeal if it so chose, which I suspect it would. And then we would be back up in the Court of Appeals on the limited issue of Lester's right to recover the $11.2 million cost of repairs. Now, if I understand correctly, at the time the Oregon action was filed, there was a jury verdict entered in Minnesota. And pursuant to custom and practice in Minnesota, there was a judgment, I guess actually entered, but subject to an automatic stay because in Minnesota the post-verdict motions that in some jurisdictions take place prior to judgment, in Minnesota they take place after something's been filed, labeled as a judgment, but the trial court hasn't passed on the customary post-verdict type motions. At the time the motion was filed, there had been a jury verdict and there had been in Minnesota an order for judgment, which was signed by the judge, which basically orders judgment to be entered in the amount of the jury verdict. What had not occurred was the ministerial task of entering the judgment on the docket, which is necessary before you can execute on it. And what occurred... Is that entered before or after the motions for the trial are ruled on? In this case, there's an automatic stay of 30 days under Minnesota law, which allows them to file the post-trial motions. Before the entry of judgment? After the judge signs the order for judgment, before the clerk, yes. Before you enter the judgment, you have the 30-day period in which the new motions for the trial can be passed. And what the judge did in this case was to extend that 30-day period to allow motions to be filed and for him to decide the motions. And it is between that order for judgment and the disposition... And the injunction was subsequently issued by the district court. Is that correct? Yes. Let me ask you to focus on something that's factual. I haven't been able to get my arms around it, which is I looked at the instructions given by the Minnesota court, which says, as I understand it, and I think this is a quote, the court has determined that one element of Lester's damages, its claims for the cost to repair the building with interseal, is barred as to any particular building unless one of the following exceptions applies. And then there's A, B, and C, which I'm sure you're familiar with. First, just in terms of chronology, B and C both make references to things that happened subsequent to January 2003. But if I understand correctly, these instructions are being given in either October or November of 2002. Is that correct? Yes. Yes. And next, it's my understanding that the jury came back in effect answering the question by saying that, yes, court, these claims are barred, but there's zero in that category, and awarding damages in the amount of $13.2 million and saying all of it fit within one of those exception categories. Was there evidence to support the proposition that zero is the right number for pursuant to these instructions? I think, yes, because I think, and what was argued was that it was their burden to prove. This was an affirmative defense, this class action res judicata. It was their burden to prove that these particular buildings or these particular customers were included in the class. What the judge below held actually against us was that one element of our right to recover the cost of repair was that we be legally liable. So that's where that first line in the jury instruction came from. Then he realized, appropriately so, that, well, for us to be released, clearly the claims of these customers have to be covered by the class, and there are exceptions to those claims covered by the class, one of which is after 1996, one of which is how many buildings are going to have failures after 2003, and the other is are they going to even fund this? And there was evidence on all of this at the trial. Suppose the answer to Judge Clifton's question were no. Suppose there were no evidence. Would that change anything? Does that still give the District Court of Oregon the right to correct this mistake? No, I think what we're arguing about is the propriety of the state court judgment, and therefore I don't, I think that. Right, wrong, or otherwise, where does the District Court of Oregon go to correct this trial error in Minnesota? I agree with you. I think we're talking, what we're discussing is a propriety of a state court decision, which Rooker-Feldman and all the other cases, and all the other doctors we cite, prohibit the federal court from second-guessing. Well, there could be an answer to that question. Where does the Oregon court get the authority to protect its judgment when they're in a sensitive stage of litigation where it may all fall apart if the other party decides not to fund that judgment because it's getting socked again in Minnesota for the same damages? That might be an answer to that question. I would submit to you that to the extent that there are any cases out there where that issue has come up, it has not been a situation where there is a private party who is not a class member, not a party in the federal court, gets no consideration, gets no monetary answer to its independent judgment, and is simply proceeding an in personam case in a parallel jurisdiction. Saying to the court that it's going to pay off the class members for the same thing that they're being paid off for by the Oregon court, and therefore may be causing the defendant, who now has the option of whether to fund the Oregon settlement, to say, no, I'm not going to fund it because it's being paid in Minnesota. That is an issue as to whether or not we have the right to receive that money. It's an issue of Minnesota law. And I submit to you a settlement by Louisiana Pacific, which we are not a party, cannot take away that right. Well, but that's not what the judge in Minnesota appeared to rule. He appeared to say that if your obligations had been extinguished and if these claims were covered by the settlement, then you're not entitled to recover. I mean, how else do you interpret these instructions? But he also went one step further. He said where all this evidence is to be sorted out is for the jury, and the jury did sort it out. I mean, the judge ultimately came to the conclusion that I will tell the jury what the law is as I see it in Minnesota, and then it's for the jury to sort out the evidence, which was very fast and very confusing at the trial on this class action. It was far from clear. I mean, at no point did they put in the opt-out list. At no point did they identify individual customers of ours that were or were not. I mean, they chose a different tact, and it might have worked, it would have been brilliant, but they did not present the evidence that was necessary to prove their case. I know some place I've read, but I've long since lost track of where it was, that something like $600,000 was paid to your client's customers. Was that in the record in any place? Yes. That was the last day of the trial. One of the Louisiana Pacific people testified that based on what he could see, which he did not have any personal knowledge, that Louisiana, that our customers had received about $640,000 to repair their buildings, the cost of which would be $11.2 million. There are many aspects about this case and many moving parts that have me trying to sort through. One of them is if Minnesota law really said, hey, you can double collect or both parties are injured, in a sense, I think you might have an easier case. But in this case, the Minnesota judge, in fact, appeared to rule that if it was covered by the class action, you shouldn't be able to collect, appeared to instruct the jury that way, and got back a result which, well, it may be the jury's result and that's the end of it, but I have to say it's difficult to square with the surrounding circumstances that are put in front of us. But, I mean, our position is something that we will press on the field, and that is that the judge was actually too harsh on us, and that is that under Minnesota law, the Supreme Court of Minnesota has ruled that a distributor in the chain distribution can recover the cost of repair. There's a likelihood of double recovery, but the Minnesota Supreme Court said, listen, we'd rather have it repaired. It's a policy judgment made. So then the question becomes, is that case limited to the circumstances when there's actual legal liability or business need? Our position has always been, in addition to the other part about the legal liability, is that we had an independent injury which had a pressing business need which compelled us to repair this. There is restatement law. There's Third Circuit law by Judge Becker. There is excellent law out there that says there is no need for legal liability. And when we go to the Court of Appeals, if we get so lucky, we will argue that the judge was actually too harsh on us. The proper rule of law was that all we had to prove was business need, which we did prove, and the jury not only, and plus the lack of evidence. So together, we were entitled to this. Well, whether this verdict conforms to the instruction or to the evidence, do I understand you correctly, that has been cut out of this appeal? That's the part that's been stayed? That has been cut out. So it's not inconceivable the Minnesota court may say this verdict is wacky in relation to the instructions given, or the instruction was wrong, or whatever. This exact dialogue that I'm having with Judge Clifton would be the exact dialogue we would have in the Court of Appeals in Minnesota in the event we get to go there. But if you prevail, your theory is you're entitled to more, and you're entitled to get double recovery. Well, it's unclear that there's double recovery, but it would be our position. But your position is you're entitled to, and the fact that there's a national settlement going on in the federal court, that court can do nothing about 50 other states that are meanwhile compensating the same defendants through their suppliers. And the court can do nothing to try to achieve total jurisdiction over the damages that are suffered by the class members. It's at the mercy of 50 separate states, which may want to pay their suppliers the same damages that the court's trying to consolidate in the National Class Act. So there's two answers to that. One way to resolve that problem would have been Louisiana Pacific and the class to define the class to include our injuries. There was a concern they could have defined the class to include us rather than exclude us. That's from Louisiana Pacific's perspective. From Lester's perspective, we have a very serious injury. I mean, if we don't repair the buildings, as the evidence showed in Minnesota, we will not have a business. This is repeat business. So we have a very serious injury which the class action does not resolve for us, and we are proceeding to recover our own damages for our independent injury. Had that been a subject of the class action, then Lester's would have been represented. There would have been discussion what the appropriate compensation would be for Lester's for that injury, and that would have been resolved. But Lester's was not represented by that class settlement. Its injury was not dealt with, and that's why we had the right to proceed in Minnesota. And while I understand district judges dealing with complex class actions, it's difficult. What Lester's has is equally difficult, and the question really becomes whether or not we can be bound by a judgment to which we are not a party. I agree with you that it's a very difficult problem. I don't know how this could be resolved. It is difficult. And by my question, I don't mean to suggest that the answer is necessarily that the power should be in the national class, but it's a problem. Isn't one of the answers that maybe Louisiana Pacific should have complained about this before the case went to the jury? Absolutely. And the Parsons case from the Supreme Court is directly on point with respect to the Anti-Injunction Act. It basically, as your honors all know, the Anti-Injunction Act is an absolute prohibition on issuing this type of injunction, except with exceptions, one of which is an exception, a relitigation exception, which is what we're talking about here, which is whether or not the judgment includes the claim. And the United States Supreme Court, in the Parsons case, said in the event that the federal plaintiff here at Louisiana Pacific allows the state court to first address the res judicata issue, irrespective of how the state court comes out, that it cannot go back and seek enforcement of that judgment in the federal court. It's had its bite at the apple. You get one bite. Where we are here, they had a bite in Minnesota where they could have won. The second bite below. They're going to have a third bite in front of the Court of Appeals. And that second bite should never have occurred is our position. And I think the Supreme Court case is right on that one. I have three minutes left. I'm happy to answer questions, or I'll save it for rebuttal. Save it for rebuttal. Thank you. May it please the Court. Michael Simon for Appellee Louisiana Pacific Corporation. The ruling that is requested by the appellant in this case threatens to undermine both the ability of federal courts to supervise and enforce nationwide consumer class action settlements, and also threatens to undermine the motivation and willingness of manufacturers to enter into such consumer class action settlements. Why did you go for an injunction at the outset of the trial? Why did you wait until you get a bad verdict and then complain about it? Your Honor, and I heard your question to counsel for Lester. The answer to that is most of what Lester was seeking in this trial, Louisiana Pacific has no objection to with respect to the settlement. They were asking for and they received their lost profits, their cost to restore their own goodwill, the cost for their siding and the cost to repair product outside of the class action settlement. We have no objection to that with respect to this settlement. They have a right to a trial on those points. And it wasn't until, frankly, we were in the middle of trial when two things happened, your Honor. One was that we heard the jury instructions that were being proposed, and I'll describe in a few moments how two out of those three points are very, very clear misinterpretations of a complex settlement that was recognized by the court below. The second point was the testimony by Lester's own president. The testimony that we've discussed in our materials by Lester's president, a fellow named John Hill, told the jury that we, Lester's, are here seeking compensation for the farmers, the class members. Wasn't there a motion in limine at the outset of the trial that sought to limit some of this stuff? There was definitely a motion in limine. So, I mean, you knew it was coming. Not to that degree of specificity, your Honor. Well, enough to make a motion to stop it. Possibly not, your Honor. And here's why. The motion in limine was to exclude references to the class action, and that was denied beforehand. There was no advance notice that the testimony would be from the president to the class members' property. There was no advance notice of that, and when that testimony was uttered in trial toward the latter part, I'm not sure exactly when, but when that testimony was uttered in trial, essentially the light went off for L.P. over L.P.'s head to say, wait a minute, what you're doing is standing in for the class members. You are asserting claims derivatively on behalf of the class members. That's what they're not allowed to do. Everything else they are allowed to do. They are allowed to seek their own past lost profits. They are allowed to seek their own cost to restore their goodwill and their own other costs if they were allowed. But they're not allowed to step into the shoes of the class members to assert claims derivatively on behalf of the class members, and frankly that did not become clear to L.P. until John Hill, Lester's president, gave that testimony at trial. Secondly, Your Honor, when the court gave its jury instructions, announced to L.P. shortly before instructing the jury what its jury instructions would be on the class settlement, it became perfectly clear that the trial court in Minnesota was grossly misunderstanding this complex class action settlement. As I believe Judge Clifton asked counsel for Lester, when the court said that the jury was to determine the claims for the cost of repair and found that those were barred unless one of three conditions, or unless one of three conditions were met, well, for that particular damage, unless three conditions were met. The first condition, Condition A, is exactly correct. This class action settlement does not apply to siding that was installed after January 1, 1996. That is correct, and then there's no bar, no release, no effect. And the judge was correct in Minnesota on that. But when the judge also then said, you can disregard, and this is what the judge effectively said to the jury, you can go ahead and disregard the District of Oregon's class action settlement if you find that the siding might fail at some point after January 1, 2003. That was in clear violation of this complex class action settlement. All of those claims were completely released and in exchange for compensation that would both pay for damaged siding discovered before January 1, 2003 and for siding that was damaged after January 1, 2003, then their compensation would be governed by the original Louisiana Pacific 25-year limited warranty. It's possible that the Minnesota judge misunderstood the class action, what was covered, what wasn't. But he attempted to carve out damages that were covered by the class action. Am I right about that? I think that's a fair reading. Why isn't then his jury instruction, if erroneous, subject to being reviewed by the Minnesota court? Because then the same thing could happen in 51 jurisdictions and even in multiple lawsuits in Minnesota. The whole point of having a federal court approve a very complex class action settlement and retaining the jurisdiction both to enforce it and to interpret it. Okay, but this is no longer a problem with what the President said on the stand that took you a while to have the light bulb go off. This is a problem with just a run-of-the-mill erroneous jury instruction. Well, with all due respect, Your Honor, it's not because it still involves the interpretation of a complex class action settlement approved by the federal court. The Minnesota Court of Appeals might very well come to another erroneous interpretation of a federal class action. Would you have a problem if there had been a clear instruction that had properly excluded the class and the jury verdict had followed that instruction? If the court would have correctly excluded class damages, then no, we would not have had a problem. Because as I concede, Your Honor, Lester was entitled to seek its own lost profits and its own cost to restore goodwill. I'll ask you another one quick question. There was a figure mentioned that said the last day of the trial one of your witnesses, a Lester witness, a Louisiana Pacific or a Lester witness who said that there was $600,000 roughly that was due to the members of the class in the class settlement? I think but I'm not positive that it was a well, I thought I was going to say Louisiana Pacific witness. I'm not positive, Your Honor, but I'm not sure it matters. Well, I think that's what they said. Does that mean that that's really the only overlap, the $600,000? Absolutely not, Your Honor. Here's why. At the time that this trial was tried in October of 2002, it was still eligible for class members to file claims in the Louisiana class action settlement. And as I said, Your Honor, there are two claims periods. Claims can be filed up until December 31, 2002. So there's still another month and a half or two months to go for additional claims to be filed, which will automatically be paid. In addition, every class member under the class action settlement has continuing rights under the class action for basically another 25 years. That is, they could file a claim that would be independently inspected by court-supervised inspectors. But then after January 1, 2003, they continue to have all of their warranty rights for the remainder of their 25-year LP class action, LP limited warranty. How could they ever be excluded other than excluding everyone who – I mean, you couldn't have conditions like there are. How would you explain to a jury what would be the correct explanation? This would be the correct explanation. First of all, that Lester would be entitled to its own damages, its own lost profits, its own cost to restore goodwill. Secondly, for all of those customers of Lester's who had their siding installed after January 1, 1996, count up the damage to repair their property because they are not class members, they are not covered by the class. Frankly, under a period, and that's it. All other – well, technically, one more. I don't believe there's any evidence that any Lester's customers had opted out. But if there was evidence or if there would have been evidence of an opt-out, then those opt-out folks. One other potential category, which is probably the troublesome one, which is somebody who doesn't realize any difficulty, hasn't had a problem by the time – and the class action has a termination date in terms of submitting claims. I thought that's where the January 1, 2003 comes from, but I've lost in the facts. And the difficulty being expressed there is somebody that hasn't put in because they didn't know they had a problem and two years subsequently have a problem but has passed the claim date. And they still have the opportunity to make and to receive compensation from LP under the class action. Here's why, Your Honor. It's a two-part process. There was a seven-year open window for filing claims with the independent court-approved claims administrator. You must file your claim no later than December 31, 2002 to go through that track. However, as the court below, Senior District Judge Judge Jones, added and made sure was added as part of the amendment to the class action settlement that he approved in April 1996, he said, but even if you didn't see that you had claims or didn't have claims or damage by the end of 2002, you still would then have your full remedies against Louisiana Pacific under its 25-year express warranty from the date that you purchased it. So even under your example, Judge Clifton, if someone did not know that they had damage or had a claim until, say, 2003 or 2004, they still have rights under the court-approved class action settlement for the balance of the 25 years from when they bought the property. I recognize that these are very subtle and nuanced and complex settlement terms, and for that reason, that's why it's important to have the federal judge that approved this settlement and understands this settlement to ensure that these terms are enforced for everyone's protection, the class members, the representatives of the class members, and to defend Louisiana Pacific consistently and correctly throughout the entire country. Let me pose a different question, and that is it's not all that unusual for cases to come to us after having previously been resolved or settled in another court. We had the last case talked about a settlement agreement, and yet it's not routinely the custom that you always wind up returning to the original court to have a resolution as to what it was the settlement or the court's judgment was supposed to say. Why is it here some other court isn't allowed to go forward and speak for itself? Because as a number of federal circuits have recognized, Your Honor, federal class action law is complex. The settlements are oftentimes complex when we have nationwide settlements, and there is a great deal of mischief and potential damage that could be done by state courts that are misinterpreting or misapplying federal class action settlements. Because of the nature of a federal class action settlement that is nationwide in scope, we have to have the federal district court that approved it and understands it have the ability to ensure that it is being followed. By the way, there was a question that arose earlier. Well, I pause on that. I mean, I can understand Congress would pass a statute to that effect, but do we have anything now that says no other court shall speak? No, we do not have any rule that I'm aware of that says no other court shall speak, but we do have the All Writs Act that gives the courts the power to issue writs, to enforce its jurisdiction, and to ensure that its judgments are followed. And we have circuit law precedent, in particular I'm thinking of the Second Circuit decision in In re Baldwin, the Third Circuit decision in In re Daya Drugs, that reflect on this precise point that when you have nationwide consumer class action settlements that are very complex, there is the possibility of serious mischief when you have other parties going into state courts all around the country trying to do that which is not allowed under the class action itself. And I submit, Your Honor, that when you have a state court jury trial where you have witnesses not only like Lester's president telling a jury, we're here to fix the barns of these class members, but we also allow the testimony of class members themselves. And here, Your Honor, I call the court's attention to something that was attached in the supplemental excerpt of record by Lester. When they filed their reply brief, they filed a supplemental excerpt of record. And in that supplemental excerpt of record at ER 950 at line 11, it shows that there was trial testimony from a class member himself. The class member was John Schwartz. Why didn't the light go off then? It sure did, Your Honor. I mean, it was going to go. Why didn't it go right back to federal court? Why are you waiting for the verdict to come in? I mean, you're rolling the dice, it seems to me. You kind of keep your fingers crossed. You hope you'll get a zero verdict. If not, then before the judge signs the judgment, you go to Oregon to complain about it. It was not an intentional or deliberate attempt to just roll our dice there. When the light went off with John Lester's testimony and this testimony from the class member who was asked, are you satisfied with your participation in the class action settlement? And he says no and explains why not. Motion for mistrial, ma'am? I believe so, but I'm honestly not positive. Certainly with post-trial motions, I'm not. That's exactly. I mean, you waited for the verdict to come in rather than either complain to the state judge about it or go to the Oregon judge to stop the trial right then and there. We certainly did complain to the state judge about it at the time, and I believe we're overruled. Now, I do believe in the dynamics of a trial that's going on in Minnesota, the ability then to, you know, in the middle of that trial to run into the district court, I submit is, you know, not particularly practical. I also do submit, Your Honor, that we did get into the federal court and did obtain the relief from this district judge below, from the district court below, before judgment was entered. I understand it was after the verdict was read, but I do recognize that. But the case law that I'm familiar with has shown that the key cutoff point is before judgment is entered. There has to be a dividing line or a clear, bright line somewhere. Should it be when the president testifies or when the class member testifies? I don't know. But certainly there has to be a dividing line somewhere that's clear and bright and gives the litigants an understanding of what they have to do and when they have to do it. We submit that the precedent shows that that dividing line is when judgment is entered. And we did satisfy that. What precedent is that? I believe that's the Parsons case, Parsons Steel v. First Alabama Bank, that interprets the Full Faith and Credit Act. And it talks about, quite clearly, that judgment had been entered, that after a judgment has been entered, a party cannot go back to another court and challenge an erroneous race judicata ruling. But it really doesn't address when you have the right to go back to the district court to try to get an injunction. That's correct, Your Honor. Diet drugs happen very early on. I mean, that happened when the time we were talking about settling or certifying the class. That's correct, Your Honor. It can happen at many different times. And I am not aware of any precedent saying that it's too late if you've done it at some point after some event, including verdict, but before judgment. The only cases that I've seen on this and the only cases that have been submitted all talk about after judgment has been entered. And that is what we did satisfy in this case, Your Honor. And I do submit, Your Honor, that if the district court's order in this case, protecting its judgment and protecting its settlement, were not accepted, then this type of problem can happen in every jurisdiction in almost every consumer class action that's made. Well, it wouldn't really have to. I mean, you could adopt the rule as long as people knew. You could say, if you want to do this, you know, get an injunction, do it by X. Whatever the rule was, it would avoid the problem. I agree with that, Your Honor. And then the question is, and I recognize it's a tough question, when is X? Is X before a jury is impaneled? Is it before the testimony is taken? What if there's testimony during trial, as there was in this case, that first indicates that they're standing in a class representative capacity with a testimony of Lester's president? Is that X? And if that is, then do we have to, within 24 hours, run to the federal court? What if it's a shorter trial and the trial's going to end the next day? Is it before the jury is sent out to the jury box? There's a number of different variables that could answer that question, when is X. And I submit, Your Honor. But in your case, there are so many Xs, it seems like. One X would have been when you lost your motion of limiting. Another X would have been when the guy testified. Another X would have been when the customer testified. Another X would have been when the jury instruction, you say, was erroneous. I mean, but what you do instead is kind of keep your fingers crossed and hope the verdict is in your favor. I do understand the court's position there. And I don't have a good answer other than to say it wasn't an intentional act to try to, you know, wait and see what happened in the jury before running to the district court. It was a simultaneous process of sort of, you know, realizing from what was going on at the trial, that they are not just, they are no longer asserting their own interests, namely Lester's own lost profits and cost to restore goodwill, but they are acting basically instead of the class members. That was the primary problem. That didn't happen essentially until midway through trial with the testimony of the president. Now, if the court's rule was, well, once it becomes clear in trial that the middleman, if you will, and that's what Lester is in this case, the middleman is asserting not just its own rights, but also the rights of class members. If that was the rule, then I do submit it would be in practice practically impossible to follow. You then have to then, you know, try to interrupt trial. A trial judge might not allow a continuation of trial. You might be going right and marching ahead to a jury verdict while running into court thousands of miles away, trying to get on the calendar of a district judge. I submit that that's a very difficult and probably practically impossible X line to set, and I do submit the clearest line, Your Honor, is when judgment has been entered. And in conclusion, Your Honor, I do believe that the trial judge below did correctly perceive, Your Honors, I do believe that the trial judge below did correctly perceive that if the type of action  it would open up the floodgate to these types of actions by middlemen or contractors in between a consumer class and a defendant manufacturer, that would cause very, very grave practical consequences, both to the federal court's ability to supervise and monitor its class action settlements, as well as to the motivation and willingness of defendant manufacturers to enter into such settlements in the first place. Well, let me ask you a question to take you over time slightly. How do you draw the line between, you said it would be perfectly proper for Lester to recover damages for what it takes to restore its reputation? I suppose part of restoring its reputation is repairing the damage that's done to these customers. They didn't say we're going to get this for the customer, but instead they say we're going to take the action necessary to restore our business. And if a state court jury in this case were properly instructed and understood that, that would be fair. A company in Lester's picture. And that could include repairing the sign. Well, first of all, that would be a matter, I think, then for state law. But what the problem comes, Your Honor, is when Lester says to the jury that we're going to use this money to make, to repair, you know, your barns and to make it right for you, the class members. That's where the problem comes in. If they say we're going to do it because it will help us, we're going to do the same act, but it's going to help us. Well, I don't think they. It might be okay, but if we're going to do it to help the class members, then it wouldn't be okay. I don't think they could say that because once they say we're going to repair the barns, then they are effectively stepping into the shoes of the class members and creating multiple classes or subclasses. The favored classes, namely those folks who are the customers of Lester's, and the disfavored classes, namely everybody else who's not a customer of Lester's. What they can say is we want the money for ourselves. We've lost profits. We've lost goodwill. We want to be compensated for that. They then have their appropriate measure of damage for compensation for damages to themselves, and if that's appropriate under state law and if that's what a jury chooses to give to them, that's what a jury chooses to give to them. But they can't then step into the shoes and say, and part of what we're going to do is to get the money for the class members' benefits, and that's how I would respond to that. We're left with an unusually blunt instrument then. If you acknowledge that they may have a claim for themselves, if they haven't tried to let the jury know it's the farmers that are going to get helped up by this, you're really looking for a mistrial, but we can't declare a mistrial. But by the same token, if they have a claim they're entitled to make, they now have an injunction preventing them from making that claim. I mean, they've told us they want to argue to the Minnesota Court of Appeals that, with this case law elsewhere, that it's appropriate for us to recover for this, that the so-called double payment or double recovery isn't a problem under Minnesota law. That possibility exists, but this injunction sits there and says, sorry, Minnesota, you can't entertain that. No, Judge Clifton, because they've already obtained that judgment. They have asked the jury for their own lost profits, and they received it. They have asked the jury for the cost to restore their goodwill, and they have received it. And nothing that is before this court or those before the court below in any way affects that. Well, I'm willing to speculate that your distinguished opponent is going to disagree with that proposition and doesn't have a problem now because this injunction says that he can't make the argument to the Minnesota court that otherwise he would be allowed to make. Because the jury heard this evidence that said the real beneficiary is going to be the farmer, so wink, wink, nod, nod, rule for us, and the farmer will make out. No, Your Honor, because any other rule would undermine the ability to have a federally approved class action settlement between consumers and a defendant manufacturer where there is anybody in the middle, any type of middleman like Lester, because then everybody would be able to make that argument, and that would undermine the settlements. Thank you very much, Your Honor. Thank you, Judge. On the last point, exactly why we wanted this money was for our own good, so we could repair the buildings so we would have no future lost profits. The jury did not award us future lost profits, presumably because they assumed we would take the money, repair the buildings, and mitigate those damages. So this was very much of the jury. The jury did award you something. What was it for? They awarded us cost of the interseal, lost profits, and an element for cost of restoration, which was an advertising campaign about how they would go about trying to get over this interseal. So they didn't award lost profits? Past lost profits. There was a future lost profit claim that they could not award us, which you can't look into the jury's mind, but it's logical to say they thought it was because we repaired the building. On the issue of when the lightbulb went on, the lightbulb went on the first day when the first affirmative defense was raised judicata. It also went on when they filed a motion in limini before trial, when they filed a motion for summary judgment before trial, when they filed direct verdicts before trial, when they had the special master from the class action come and testify on their behalf. The class action was part of their defense from day one. The trial judge in Minnesota asked, what, you know, did you go to the federal court on this thing? They said that if there had been a proper instruction, they wouldn't have had any trouble. Well, on the time you question, this question about when it's right, the United States Supreme Court has decided in the Parsons case, and it says that if the effect of the race judicata or release defense was first determined in the state court, even if the state court mistakenly rejected it, this does not justify the highly intrusive remedy of a federal court injunction against the enforcement of the state court judgment. Challenges to the correctness of a state court's determination as to the conclusive effect of a federal judgment must be pursued by way of appeal through the state court system and certiorari. Theoretically, they don't like the way this judgment was interpreted. They can go to the Court of Appeals, Minnesota Supreme Court, United States Supreme Court. On the issue of overlap of the 640, an issue at this trial was they had not yet funded this settlement completely. They had options. We asked the chairman of the board, Louisiana Pacific, are you going to fund this settlement to make it complete? And he said, I will not tell you that. I have not decided. So how could there be an effective release with that evidence? This court, this case had to be decided as the settlement and the judgment existed at the time of the trial. Lastly, on this question of this global argument that counsel is making about class settlements and how can we have state courts construing them and all that kind of stuff, this is a class settlement involving certain representative parties. It is one thing to argue that a federal judge administering that should interpret it. And if there is a case proceeding out there to issue an injunction before it gets decided. It is quite another when what is being litigated is the rights of a party who is not a party to the class settlement, who is not represented by the class settlement. And this class settlement as a private agreement does not give a roving commission to the federal court system to decide whatever companies, non-parties, rights it so chooses on the grounds that it might have some effect on the class action. Thank you. Thank you. Thank you, counsel. Thank you both very much. Thank you. The case to be argued will be submitted. The court will stand at recess today. All rise. This court for this session stands adjourned. Thank you. Thank you. Thank you.
judges: Reinhardt, Silverman, Clifton